### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

RODOLFO BAEZA and ALMA BAEZA,

      Plaintiffs,

vs.                                     Civ. No. 06-0407 MV/WPL

LARRY TIBBETTS, GUIDANT, Inc., an
Indiana Corporation, and CARDIAC
PACEMAKERS, INC., an Indiana
Corporation,

      Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' Motion to Remand, filed

June 9, 2006, **[Doc. No. 11]**, and Defendants' Motion to Stay All Case Proceedings Pending

Transfer of Case to MDL 1708, filed May 17, 2006, **[Doc. No. 3]**.  The Court, having considered

the motions, briefs, relevant law and being otherwise fully informed, finds that Plaintiffs' motion

to remand will be **GRANTED** and Defendants' motion to stay will be **DENIED**.

### FACTUAL BACKGROUND

This case is one of more than 260 cases currently pending in federal courts around the

country arising out of the surgical implantation of allegedly defective cardiac medical devices

manufactured by Defendant Cardiac Pacemakers, Inc. ("CPI").  On November 7, 2005, the

Judicial Panel on Multidistrict Litigation ("JPMDL") established a Multidistrict Litigation Court

("MDL Court") entitled *In Re Guidant Corp. Implantable Defibrillators Products Liability*

*Litigation*, MDL Docket No. 1708, in the District of Minnesota for coordinated and consolidated

pretrial proceedings pursuant to 28 U.S.C. § 1407.  More than 240 cases have been transferred or

formally ordered to be transferred to the MDL Court.

On April 10, 2006, Plaintiffs filed a complaint in the First Judicial District Court, County of Santa Fe, New Mexico, alleging claims arising out of an allegedly defective cardiac medical device implanted in Plaintiff Rodolfo Baeza.  Defendants removed the case to this Court, asserting that Defendant Larry Tibbetts was fraudulently joined as a defendant for the purpose of destroying diversity of citizenship and preventing removal.  On May 17, 2006, Defendants filed the instant motion seeking to stay all case proceedings pending transfer of this case to the MDL Court.  Plaintiffs opposed this motion and filed a motion to remand.

## LEGAL ANALYSIS

Plaintiffs request that the Court remand this action while Defendants seek a stay of the case pending the decision of the MDL Panel on transfer of this action to the consolidated proceeding in Minnesota.[1]  Defendants contend that a stay should be granted prior to the Court ruling on the motion to remand in order to conserve judicial resources and to reduce the risk of inconsistent rulings.  Plaintiffs contend, on the other hand, that the Court should consider the remand now because transferring the case to the MDL will cause the case to "be delayed for some unknown period, weeks, months, or years."

The decision to grant or deny a temporary stay of proceedings pending a ruling on the transfer of the matter to the MDL Court lies within this Court's discretion.  *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936);  *see also* Rules of the Judicial Panel on MDL, Rule 1.5 ("The pendency of a motion ... before the Panel concerning transfer ... of an action pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and proceedings in the district court in

---

[1] On May 30, 2006, the JPML issued an order conditionally transferring this case to the MDL Court.

2

which the action is pending and does not in any way limit the pretrial jurisdiction of that court.").

The threshold question is whether the Court should address the motion to remand prior to considering the motion to stay.  Often, deference to the MDL court for resolution of a motion to remand provides the opportunity for the uniformity, consistency, and predictability in litigation that underlies the MDL system. *See* 28 U.S.C. § 1407; *see also Rivers v. Walt Disney Co*., 980 F.Supp. 1358, 1360-61 (C.D.Cal. 1997) (staying action pending transfer decision by MDL panel after finding that judicial resources would be conserved and defendant would not be prejudiced). Some courts have even stated that  "[t]he general rule is for federal courts to defer ruling on pending motions to remand in MDL litigation until after the JPMDL has transferred the case to the MDL panel." *Jackson v. Johnson & Johnson*, *Inc.*, No. 01-2113 DA, 2001 WL 34048067, at *2-3, 6 (W.D. Tenn. Apr. 2, 2001) ("because this case may join many others in the [transferee court], where the same jurisdictional issues are under consideration, the considerations of judicial efficiency and uniformity of result warrant a deferral of Plaintiffs' Motion to Remand to allow [the transferee judge] to determine whether this case should become an MDL case");  *see also Knearem v. Bayer Corp*., No. 02-2096-CM, 2002 WL 1173551, at *1 (D. Kan. May 7, 2002) (staying action pending MDL transfer because it would allow one judge--the transferee judge--to deal with the common issues raised by remand motions filed by plaintiffs in the transferred actions).

The fullest discussion of the methodological issues raised by simultaneous remand and stay motions in the MDL context appears in *Meyers v. Bayer AG*, 143 F.Supp.2d 1044, 1048-1049 (E.D.Wis. 2001).  The *Meyers* court developed the following three-step approach for determining whether a court should decide a stay motion when a remand motion is also pending: First, the

court should give preliminary scrutiny to the merits of the motion to remand. If this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court. Second, if the jurisdictional issue appears factually or legally difficult, the court should determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding. Third, if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred, the court should stay the action. *Meyers*, 143 F. Supp.2d at 1048-49; *see also Board of Trustees of Teachers' Retirement Sys., of State of Illinois v. Worldcom, Inc*., 244 F. Supp.2d 900, 903 (N.D. Ill. 2002). While the Tenth Circuit has not expressly adopted this approach, the Court generally agrees with the reasoning and methodology of *Meyers* and, accordingly, incorporates it in its analysis.

### A.  Preliminary Scrutiny to the Merits of the Motion to Remand.

An action filed in state court may be removed to federal court if the federal court would have had original subject matter jurisdiction over the action. 28 U.S.C. § 1441(a). District courts are authorized to exercise original jurisdiction over civil actions in which the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs and the parties are citizens of different states. 28 U.S.C. § 1332(a). One exception to the requirement of complete diversity, however, is when a nondiverse defendant has been fraudulently joined[2] for the purpose of

---

[2] Fraudulent joinder is a term of art. It does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant. *See, e.g., Chilton Private Bank v. Norsec-Cook, Inc*., 99 B.R. 402, 403 (N.D. Ill. 1989) ("But 'fraudulent joinder' is a misnomer; the issue is really whether the joinder was 'improvident.' That is, the motive of the plaintiff is immaterial. Rather, the issue is whether there is an arguably reasonable basis for imposing liability.").

defeating diversity jurisdiction.  *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921) (right of removal cannot be defeated by "a fraudulent  joinder of a resident defendant having no real connection with the controversy").  A district court may disregard a nondiverse party named in the state court complaint and retain jurisdiction if joinder of the nondiverse party is a sham or fraudulent.

Defendants bear the burden of proving fraudulent  joinder. *Getty Oil Div. of Texaco v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir.1988).  Defendants claiming fraudulent  joinder bear a heavy burden, as they must prove with "complete certainty" that the plaintiff's claims against the non-diverse defendant could not succeed in state court:

> To prove their allegation of fraudulent joinder [the removing party] must demonstrate that there is no possibility that [plaintiff] would be able to establish a cause of action against [the joined party] in state court.  In evaluating fraudulent joinder claims, we must initially resolve all disputed questions of fact and all ambiguities in the controlling law in favor of the non-removing party.  We are then to determine whether that party has any possibility of recovery against the party whose joinder is questioned.  This standard is more exacting than that for dismissing a claim under Fed.R.Civ.P. 12(b)(6).

*Montano v. Allstate Indem.*, No. 99-2225, 211 F.3d 1278, 2000 WL 525592, at *1-2 (10th Cir. 2000)[3] (quoting *Hart v. Bayer Corp.*, 199 F.3d 239, 246 (5th Cir. 2000) as a representative example of the heavy burden placed on the party asserting fraudulent joinder);  *see also Smoot v. Chicago, Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967) (fraudulent joinder

---

[3]  The court recognizes that pursuant to 10th Cir. R. 36.3(B) citation to unpublished decisions is disfavored.  The Tenth Circuit, however, has not clearly set forth the evidentiary standard applicable to fraudulent joinder claims in previous published opinions.  Moreover, the court's analysis in *Montano* has persuasive value with respect to this issue and it assists this court in the disposition of the pending motion. *See* 10th Cir. R. 36.3(B)(1)-(2) (explaining that unpublished decisions may be cited if they have persuasive value with respect to a material issue not addressed in a published opinion and it would assist the court in its disposition).

"must be capable of summary determination and be proven with complete certainty").

When it does not involve any actual fraud in the pleading of jurisdictional facts, as it does not here, the question of fraudulent joinder is closely related to the question of whether a cause of action is stated against the non-diverse defendant. "If a cause of action is stated against a non-diverse Defendant, the case should be remanded to state court as there is no fraudulent joinder of said Defendant and diversity is lacking." *Fine v. Braniff Airways, Inc.*, 302 F.Supp. 496, 497 (W.D. Okla. 1969).

Although the court's inquiry bears some resemblance to that of a motion to dismiss pursuant to Rule 12(b)(6), the scope of the inquiry is different, and the court may look beyond the pleadings to determine whether the joinder is fraudulent. *See Smoot*, 378 F.2d at 882 ("federal courts may look beyond the pleadings to determine if the joinder, although fair on its face, is a sham or fraudulent device to prevent removal"); *City of Neodesha, Kan. v. BP Corp. N. Am. Inc.*, 355 F.Supp.2d 1182, 1185 (D. Kan. 2005) ("[U]pon specific allegations of fraudulent joinder, the court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available.") (quoting *Dodd v. Fawcett Publ'ns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964).

Under Tenth Circuit law, therefore, Defendants must prove that there is no possibility that Plaintiffs can assert a claim against Defendant Tibbetts.  Remand is required if any one of the claims against Defendant Tibbetts is possibly viable. *See Montano* , 211 F.3d 1278, 2000 WL 525592 at *2 ("remand is required if any one of the claims against the non-diverse defendant . . . is possibly viable").

Plaintiffs assert claims against Defendant Tibbetts for strict products liability and for

violations of the New Mexico Unfair Practices Act.   Defendants contend that these claims are not

viable based on an affidavit from Defendant Tibbetts stating, in part, that he never directly made

any oral or written representations about the cardiac medical device to Plaintiffs, Plaintiff Rodolfo

Baeza's doctor, or the medical facility that implanted the cardiac medical device in Plaintiff

Rodolfo Baeza and that he never distributed, sold, supplied, marketed, or promoted the cardiac

medical device to Plaintiffs, Plaintiff Rodolfo Baeza's doctor or the medical facility that implanted

the cardiac medical device in Plaintiff Rodolfo Baeza.

### i.  Strict Products Liability Claim

New Mexico has adopted the principle of strict products liability stated in the Restatement

(Second) of Torts § 402A (1965).  *See Stang v. Hertz Corp*., 83 N.M. 730, 732, 497 P.2d 732,

734 (1972).  Under this theory, all parties in the chain of distribution of a defective product are

strictly liable.  *Parker v. St. Vincent Hosp*., 1996-NMCA-070, ¶ 4, 122 N.M. 39, 919 P.2d 1104

("Ordinarily, any entity engaged in the business of selling or otherwise distributing products is

strictly liable for distributing a defective product.").  "Imposition of strict liability hinges on

whether the party in question has any participatory connection, for personal profit or other

benefit, with the injury-causing product and with the enterprise that created consumer demand for

and reliance upon the product."  *Kasel v. Remington Arms, Inc.*, 24 Cal.App.3d 711, 725 (1972);

*see also Zamora v. Mobil Corp*., 104 Wash.2d 199, 704 P.2d 584 (Wash.1985) (for purposes of

strict liability, the degree of a seller's participation in the marketing process is less important than

whether the seller had some identifiable role in placing a defective product on the market.).

While New Mexico does not appear to have directly addressed the issue, courts in other

jurisdictions adopting the Restatement (Second) of Torts principles of strict liability have found

sales representatives strictly liable for distributing defectively manufactured products. *See, e.g., Bittler v. White & Co.*, 203 Ill.App.3d 26, 148 Ill.Dec. 382, 385, 560 N.E.2d 979, 982 (App. Ct. 1990) (sales representative who never had possession of the product, but earned commissions on its sale, had a "participatory connection" to it and was held strictly liable); *Little v. Maxam, Inc.*, 310 F.Supp. 875 (S.D.Ill.1970) (sales representative is part of the chain of distribution for purposes of strict liability notwithstanding that he does nothing to affect the product itself and never has possession of it).

Defendant Tibbetts has submitted an affidavit disclaiming any direct sales contact with Plaintiffs, Plaintiff Rodolfo Baeza's physician or the hospital where Plaintiff Rodolfo Baeza's cardiac device was implanted. Notably, however, Defendant Tibbetts' affidavit does not deny that he sold, promoted, marketed, or distributed the cardiac device in New Mexico. The fact that he may not have directly marketed to Plaintiffs or Plaintiffs' healthcare providers does not necessarily insulate Defendant Tibbetts from strict liability. Even parties who are not within the actual chain of distribution, but who play an integral role in the marketing enterprise of an allegedly defective product and participate in the profits derived from placing the product into the stream of commerce, may be held liable under the doctrine of strict liability. *See Kirby v. Rouselle Corp.*, 108 Misc.2d 291, 437 N.Y.S.2d 512 (N.Y .Sup. Ct.1981) (distributor can be found liable in strict products liability for a defective product even if the manufacturer ships the product directly to the buyer and the distributor never inspected, controlled, installed or serviced the product); *Brumbaugh v. CEJJ, Inc.*, 152 A.D.2d 69, 547 N.Y.S.2d 699, 701 (N.Y.1989) (exclusive marketing agent who did not take actual possession, title or control of product held strictly liable as the "sole conduit" by which the product entered the marketplace); *Barth v. B.F. Goodrich Tire*

8

*Co.*, 265 Cal.App.2d 228, 71 Cal.Rptr. 306 (Cal. Ct. App.1968) (a wholesale and retail distributor

for Goodrich tires was held strictly liable in tort although it neither manufactured nor sold the

defective tire in question, emphasizing that the distributor benefitted from servicing Goodrich's

national accounts).  Notably, in *St. Martin v. Wyeth, Inc.*, 2003 U.S. Dist. LEXIS 26211, *12

(D.N.M.), the court, applying New Mexico law, found that plaintiffs potentially stated viable

claims against a sales representative for purposes of fraudulent joinder when the sales

representative sold, promoted, marketed, or distributed an allegedly defective drug in New

Mexico even if the sales representative did not directly market the drug to plaintiffs' health care

providers.

Resolving all disputed questions of fact and all ambiguities in the controlling law in favor

of Plaintiffs, it appears that Plaintiffs have stated a potentially viable claim against Defendant

Tibbetts.  At a minimum, this claim will require an intricate analysis of state law.  *See, e.g.,*

*Montano,* 211 F.3d 1278, 2000 WL 525592, at *2 ("A claim which can be dismissed only after an

intricate analysis of state law is not so wholly insubstantial and frivolous that it may be

disregarded for purposes of diversity jurisdiction.") (quoting *Batoff v. State Farm Ins. Co.*, 977

F.2d 848, 851-53 (3d Cir. 1992).  Consequently, the Court finds that joinder of Defendant

Tibbetts was not fraudulent and removal of this action was improper.[4]

---

[4] The Court never reached the second prong of the *Meyers* analysis, which requires the
Court to determine if the jurisdictional issue appears factually or legally difficult and, if so,
whether identical or similar jurisdictional issues have been raised in other cases that have been or
may be transferred to the MDL proceeding.  It does not appear, however, that this case would
have satisfied that prong.  While Defendants assert that similar jurisdictional issues have been
raised in other cases that have been or may be transferred to the MDL proceeding, the evidence
provided by Defendants shows only that some courts have stayed other cases against Defendants
Guidant and/or Cardiac Pacemakers pending transfer to the MDL.  Defendants have not
submitted evidence that any of these cases involved similar fraudulent joinder arguments based on

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Remand, filed June 9, 2006,

**[Doc. No. 11]**, is hereby **GRANTED**.  This matter is hereby remanded to First Judicial District

Court, County of Santa Fe, New Mexico.  No fees or costs will be awarded.

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay All Case Proceedings

Pending Transfer of Case to MDL 1708, filed May 17, 2006, **[Doc. No. 3]**, is hereby **DENIED**.

Dated this 7th day of July, 2006.

_____
MARTHA VAZQUEZ
U. S. DISTRICT COURT JUDGE

Attorneys for Plaintiffs:
  Turner Branch, Esq.
  Richard J. Valle, Esq.
  Jeremy Pena, Esq.
  James P. Lyle, Esq.

Attorneys for Defendants:
  Bruce Hall, Esq.
  Tom Outler, Esq.
  Timothy A. Pratt, Esq.
  Deborah A. Moeller, Esq.

---

the naming of a non-diverse sales representative.